FILED IN CHAMBERS
U.S.D.C. Rome

OCT 19 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PETER NICOLATOS,

      Plaintiff,

    v.

SPRINT/UNITED MANAGEMENT
COMPANY,

      Defendant.

CIVIL ACTION

NO. 1:05-CV-1722-RLV

O R D E R

This is an action for employment discrimination under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (2000) ["FMLA"], and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2000) ["ERISA"], in which the plaintiff asserts that he was unlawfully terminated by the defendant. Pending before the court are the defendant's Motion for Summary Judgment [Doc. No. 29], the plaintiff's Motion to Exceed Page Limitations [Doc. No. 37], the plaintiff's Motion for Leave to Substitute Exhibit A [Doc. No. 40-1], and the defendant's Motion to Exceed Page Limitation [Doc. No. 45]. For the reasons set forth below, the defendant's Motion for Summary Judgment is GRANTED. The other motions are also hereby GRANTED.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her on which he or she bears the ultimate burden of proof. Id. at 322-23.   Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.   Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

The undisputed facts in this case are relatively straight forward.   The plaintiff was employed as a salesperson by the defendant from March 2002 until July 2, 2003.  On July 1, 2003, the day before his employment was terminated, the plaintiff went to an athletic club after work and suffered injuries when he fell off a treadmill.  That evening, the plaintiff telephoned his supervisor and advised him that a report due by the next day would not be submitted because of his injuries sustained in the treadmill

2

accident.   On the following day, July 2, 2003, the supervisor called the plaintiff as he was being treated for his injuries.   The supervisor told the plaintiff that there was an important matter to discuss, but the plaintiff informed his supervisor that he was in the emergency room undergoing treatment and could not speak with him at that time.   Later that same day, the supervisor again called the plaintiff and terminated his employment.

In this case, the plaintiff makes three claims: (1) the defendant interfered with the plaintiff's right to leave under the FMLA for a serious health condition, (2) the defendant terminated the plaintiff in retaliation for attempting to exercise his rights under the FMLA, and (3) the defendant terminated the plaintiff in order to deny him benefits under ERISA.

The threshold issue relating to all three claims is whether the plaintiff, when he spoke with his supervisor on two separate occasions after he had sustained injuries in the treadmill accident, put the defendant on notice of a potentially qualifying event entitling him to benefits.   Relevant to those two conversations are the plaintiff's deposition testimony and the plaintiff's subsequent affidavit.   However, the plaintiff's affidavit is not competent evidence because it is neither signed nor sworn to.   An affidavit submitted in opposition to a motion for summary judgment must affirmatively show that the statements made in the affidavit are those of the affiant.   Fed. R. Civ. P. 56(e).

3

Because the plaintiff's affidavit lacks those critical features, this court will look only to the plaintiff's deposition testimony to determine whether there is a material fact at issue and whether the defendant is entitled to judgment as a matter of law.

The precise nature of what the plaintiff told his supervisor is important because in order to qualify for benefits under FMLA, an employee must give his employer sufficient notice of a condition that could qualify for FMLA leave. Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). In this regard, the only competent evidence before this court relating to the conversations between the plaintiff and his supervisor, Tim Boone, is the plaintiff's deposition testimony; because that evidence is undisputed, there is no issue of material fact. Thus, the only question is not *what* the plaintiff told his employer, but *whether* it constituted sufficient notice to trigger FMLA benefits.

Whether the plaintiff's communications provided sufficient notice centers on the two conversations he had with his supervisor after the treadmill accident. The deposition testimony of the plaintiff regarding the first conversation on July 1, 2003 is as follows :

Q: Okay. And did you tell him why you were at the hospital?

A: I -- Actually I had -- I had called him when I got hurt. First I -- called Tim and said I was hurt and I had had a fall and that I was going to be late with my wake [sic] -- my weekly sales report. Because I had been put on notice the day before. So when I knew that I was hurt and I wasn't going to get my sales report, I called to let him know that.

4

Dep. of Peter G. Nicolatos at 105-06 (July 25, 2005).  Later during

the deposition, the plaintiff again testified about the first

conversation with his supervisor just after the treadmill accident:

> Q: You mentioned, although he said the next day, before you
> had told him how badly injured you were, you claim, that he
> had to speak to you immediately, he had something of immediate
> nature to talk to you about: right?
>
> A: When I -- after I called Dr. Davidson and said what I
> should do, should I go to the emergency room or should I, you
> know, can you treat me, after she told me that I should be
> treated at her office -- and her concern was I was going to go
> to the emergency room and wait many hours to be attended to.
> So after I called Dr. Davidson and after I spoke with Dave
> Burns, I called Tim Boone, spoke with Tim Boone, and I told
> him that I had just fallen, and that I was in a lot of pain,
> and there was no way I was going to get my report done.
> That's when he knew that I had fallen and that I had -- my
> head hurt, you know, I was in a lot of pain, and that's when
> he knew.  That's what I knew.
>
> Q: The full extent of his knowledge at that point?
>
> A: Yes.

Nicolatos Dep. at 259.

The only other point during the plaintiff's deposition where

he testifies as to what he told his supervisor is a brief statement

about the second conversation on July 2, 2003:

> Q: Okay.  About the loss of the job, I just want to touch upon
> one thing.  When your employer called you the next day when
> you were in the emergency room, he didn't know the nature and
> extent of your injuries at that time, did he?
>
> A: I told him that I had fallen, that I'd hit my head, that I
> was in a lot of pain, and I was having x-rays.  I didn't know
> them, so he didn't know them.
>
> Q: Right.  That you'd be laid up for weeks or whatever, that
> you'd have these permanent problems, or any of those things?
>
> A: No, sir.  I never imagined it.

Nicolatos Dep. at 257.

To take advantage of the FMLA provisions for unforeseeable leave due to a serious heath condition, an employee must give the employer enough information to make the employer aware of a potentially FMLA-qualifying situation.  29 C.F.R. §825.303.  The defendant argues that what the plaintiff told his supervisor in the two conversations prior to being terminated was insufficient to put it on notice and that, based on those conversations, the defendant could not reasonably be expected to believe the plaintiff's injuries potentially entitled him to FMLA leave. [Br. in Supp. of Def.'s Mot. for Summ. J., Doc. No. 29-2.] The plaintiff disagrees, but there is no competent evidence before the court suggesting that the defendant was ever made aware of a health condition serious enough to put the defendant on notice other than the deposition testimony.[1]

The Eleventh Circuit's decisions in <u>Gay v. Gilman Paper Co.</u>, 125 F.3d 1432 (11th Cir. 1997), and <u>Cruz v. Publix Super Mkts., Inc.</u>, 428 F.3d 1379 (11th Cir. 2005), are controlling on this issue. In <u>Gay</u>, 125 F.3d at 1436, the court held that an employee

_____

[1]The court notes that although the plaintiff includes in his argument his affidavit and a letter allegedly written to the defendant's human resources department, that evidence is not properly before the court.   The affidavit is unsigned and, therefore, not in compliance with Rule 56(e).  Also, the letter to the human resources department [Plntf.'s Opp. to Def.'s Mot. for Summ. J., Exhibit D (Letter to Mr. Moyer), Doc. No. 38-6], is not properly authenticated and, therefore, will not be considered by this court.  <u>First Nat'l Life Ins. Co. V. California Pacific Life Ins. Co.</u>, 876 F.2d 877, 881 (11th Cir. 1989).

requiring unforeseeable FMLA leave must provide information sufficient to put the employer on notice that the employee's absence is due to a potentially FMLA-qualifying situation. In that case, the employee's husband told her employer that she was having only tests conducted when in fact the employee had been hospitalized for a nervous breakdown, and the husband lied about the employee's whereabouts. The court said that given that very limited information, the employer "could not reasonably be expected to conclude that Gay's absence might have qualified for treatment under the FMLA." Id. at 1436.

In Cruz, the Eleventh Circuit more recently interpreted the notice requirement for triggering FMLA benefits. In that case, the employee claimed that she had put her employer, Publix, on notice of a potential FMLA situation when she had informed her supervisors that she needed leave to attend to her daughter who was in labor, that the daughter's husband had a broken collarbone, and that the daughter needed her help. However, the employee did not inform her employer that her daughter's pregnancy was anything other than a normal pregnancy (pregnancy itself not being a qualifying event, only incapacity due to pregnancy). Consequently, the court concluded that providing only those general facts was "insufficient to shift the burden to Publix to request further information because Publix could not reasonably be expected to conclude that her absence qualified for FMLA leave." Id. at 1385. In the Eleventh Circuit's view, in order to put her employer on sufficient

7

notice, the employee had a responsibility to inform her employer of complications with her daughter's pregnancy and that her daughter could not care for herself. However, because the employee "merely expressed her desire to assist her adult daughter in the birth of her granddaughter," such expression was insufficient notice. Id.

In the case before the court, the plaintiff told his employer only that he had fallen and was in a lot of pain, had hit his head, and was having x-rays. He informed his employer that a report due the following day would be late, but he did not tell the employer that he might be absent from work for an extended period of time. As in Cruz, the plaintiff in this case merely told his employer of a situation that in itself did not appear overly serious. At the time that the plaintiff was terminated, the defendant knew that the plaintiff had been hurt, but it also knew he did not require ambulatory care, hospitalization, or inpatient treatment. In other words, even viewing the evidence in a light most favorable to the plaintiff, the court finds that the defendant could not have thought that the plaintiff's injuries were very serious when the plaintiff himself did not appear to think so. Consequently, the employer could not reasonably be expected to believe that FMLA leave was possibly warranted. Thus, just as in Cruz, the defendant in this case was never on notice of a potentially FMLA-qualifying situation, and so it did not terminate the plaintiff in violation of the FMLA. Therefore, the defendant did not interfere with the plaintiff's rights under the FMLA.

In regards to the plaintiff's second claim, that he was terminated in retaliation for attempting to exercise rights under the FMLA, that claim must also fail.  To establish a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a statutorily protected activity, (2) that he experienced an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse action. Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286 (11th Cir. 2006).  Once that test is met, the burden shifts to the defendant to articulate a legitimate reason for the action, and then it shifts back to the plaintiff to show that the action was a pretext.  Id. (citing McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973).

The first step in the retaliation analysis is determining whether the plaintiff was engaged in a protected activity at the time he was terminated.  However, since this court has concluded that the plaintiff was not protected by the FMLA because he failed to give sufficient notice, the plaintiff could not have been engaged in a protected activity.  Accordingly, the plaintiff fails to meet the first element of a prima facie retaliation claim. Because the plaintiff did not engage in a statutorily protected activity, the defendant did not terminate the plaintiff in retaliation for exercising rights under the FMLA.

With respect to the plaintiff's third assertion, that he was terminated in order to deny him benefits under ERISA, that claim fails because he did not exhaust available administrative remedies before seeking redress in this court.   Under well-established Eleventh Circuit law, "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." Perrino v. Southern Bell Tel. & Tel. Co., 209 F.3d 1309 (11th Cir. 2000).[2]  However, the plaintiff has not put forth any evidence that he has pursued or exhausted his administrative remedies.  Nor did the plaintiff make any argument as to why this court should excuse the   exhaustion   requirement.    Without   pursuing   the   available administrative remedies before filing suit in this court, the plaintiff's claim fails as a matter of law.

For   the   foregoing   reasons,   defendant's   Motion   for   Summary Judgment [Doc. No. 29] is GRANTED; the plaintiff's Motion to Exceed Page Limitations [Doc. No. 37] is GRANTED; the plaintiff's Motion for Leave to Substitute Exhibit A [Doc. No. 40-1] is GRANTED; and

---

[2]The   plaintiff   argues   that   the   defendant   relies   on   un-authenticated   evidence   to   show   the   existence   of   available administrative remedies and that consequently this court cannot properly rely on those documents.  While this was a true statement when made, the defendant later properly authenticated in its reply brief the exhibits relied on in its argument. [Reply Br. in Supp. of Def.'s Mot. for Summ. J., Exhibit 7-8, Doc. No. 46-10 & 46-11.] Pretermitting the question of whether these documents have been previously authenticated, the court concludes that they have been properly   authenticated   prior   to   this   court's   considering   the pending motions.   Consequently, that evidence is properly before the court.

the defendant's Motion to Exceed Page Limitation [Doc. No. 45] is also GRANTED.

SO ORDERED, this _19th_ day of October, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge