FILED IN CHAMBERS
U.S.D.C. Rome

NOV 28 2006

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PETER NICOLATOS,

    Plaintiff,

v.

SPRINT/UNITED MANAGEMENT COMPANY,

    Defendant.

CIVIL ACTION

NO. 1:05-CV-1722-RLV

O R D E R

    This is an action for employment discrimination under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (2000) ["FMLA"], and the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2000) ["ERISA"], in which the plaintiff asserts that he was unlawfully terminated by the defendant. Pending before the court is the plaintiff's motion to reconsider and to file affidavit out of time [Doc. No. 53-1]. Previously, in an order filed on October 19, 2006, this court granted summary judgment in favor of the defendant on the two claims arising under the FMLA and the one claim under ERISA.

    For the reasons set forth below, the plaintiff's motion to reconsider is GRANTED. The court hereby vacates in part its earlier order granting the defendant's motion for summary judgment, vacates the judgment entered pursuant to that order, and vacates the bill of costs taxed against the plaintiff. This court's prior decision to grant summary judgment in favor of the defendant

regarding the ERISA claim is not affected by this order, and, consequently, that part of the October 19 order still stands.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

As previously outlined by the court, the undisputed facts in this case are relatively straightforward. The plaintiff was employed as a salesperson by the defendant from March 2002 until July 2, 2003. On July 1, 2003, the day before his employment was terminated, the plaintiff went to an athletic club after work and suffered injuries when he fell off a treadmill. That evening, the plaintiff telephoned his supervisor and advised him that a report due by the next day would not be submitted because of the injuries sustained in the treadmill accident. On the following day, July 2, 2003, the supervisor called the plaintiff while he was undergoing treatment for his injuries. The supervisor told the plaintiff that there was an important matter to discuss, but the plaintiff informed his supervisor that he was in the emergency room undergoing treatment and could not speak with him at that time. Later that same day, the supervisor again called the plaintiff and terminated his employment for cause.

In this case, the plaintiff makes two assertions relevant to the FMLA claims: (1) the defendant interfered with the plaintiff's right to leave for a serious health condition under the FMLA, and (2) the defendant terminated the plaintiff in retaliation for attempting to exercise his rights under the FMLA.

The threshold issue relating to these two claims is whether the plaintiff, when he spoke with his supervisor after he had sustained injuries in the treadmill accident, ever put the defendant on notice of a potentially qualifying event entitling him to benefits. More specifically, the central question before the court is whether there is a material fact at issue regarding the plaintiff's communications with his supervisor on the evening of July 1, or on July 2.

Relevant to those two conversations is the evidence before the court in the nature of the plaintiff's deposition testimony and the plaintiff's subsequent affidavit. In the October 19 order, however, this court did not consider the plaintiff's subsequent affidavit because it was neither signed nor sworn to. Accordingly, the only competent evidence before the court at that time was the plaintiff's deposition testimony. Thus, looking only at the plaintiff's deposition, and not at his subsequent affidavit, this court concluded that there was no issue of material fact. Consequently, the defendant was entitled to judgment as a matter of law.

However, since the October 19 order was filed, the plaintiff has shown good cause why this court should reconsider it previous decision. In the motion for reconsideration, the plaintiff's attorney has explained why the plaintiff's subsequent affidavit on file in the court's electronic case filing system was not properly affirmed. Although a copy of the affidavit was on file, that copy was not signed; therefore, the court could not properly consider that document. The reason why the affidavit on file was not signed nor sworn to, according to the plaintiff's attorney, was because she did not scan the signed document. Rather, she first electronically filed a copy of the unsigned affidavit, and then later mailed the signed affidavit to the court clerk instead of filing it electronically. Consequently, when the clerk's office received the signed affidavit, that same document was already on file (though it was unsigned), and thus the clerk's office did not file what seemed to be a document that had already been docketed.

The plaintiff's counsel argues that the practice of mailing the signed affidavit instead of electronically filing it arose out of an abundance of caution to ensure that the court had the physical document on file. Counsel's expectation that the signed copy would be filed by the clerk, even though a copy of the same document was already on file, is apparently legitimate under the local rules. Local Rule Appendix H II.C.3(a) states, "If the original document requires the signature of a non-attorney, the filing party or the Clerk's Office shall scan the original

4

document, then electronically file it on ECF."  Because the rule places the onus of electronically filing the original document on either the filing party or the clerk's office, counsel's belief that the clerk's office would accomplish the required task for her is arguably valid.  However, in retrospect, that expectation was ill-advised considering that a copy of the same document, albeit an unsigned copy, was already on file.  It is apparent to this court that the unintended consequence of counsel's abundance of caution was that it caused more confusion than clarity.  Because the plaintiff's counsel acknowledges that a future practice of either scanning the original document *or* sending it to the clerk's office is the preferred technique, this court views her actions as an excusable mistake that justifies this court in relieving the plaintiff of final judgment rendered against him in the October 19 order.  Consequently, this court revisits the defendant's motion for summary judgment and now considers both the plaintiff's deposition testimony and his subsequent affidavit.

As this court noted in its October 19 order, the precise nature of what the plaintiff told his supervisor is important because in order to qualify for benefits under FMLA, an employee must at least give his employer sufficient notice of a condition that could qualify for FMLA leave.  Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005).  When this court previously considered the defendant's motion for summary judgment, the only competent evidence before the court regarding the

conversations between the plaintiff and his supervisor, Tim Boone, was the plaintiff's deposition testimony. However, because the court has concluded that the plaintiff's affidavit may now be properly considered, the analysis turns to whether the deposition testimony and the affidavit, taken together, create a genuine dispute of material fact.

The defendant's motion for summary judgment argued that the deposition testimony established facts entitling it to judgment as a matter of law and that the subsequent affidavit contradicts the deposition testimony solely in order to create a material issue of fact and, therefore, must be disregarded as a sham. This argument is based on the sham affidavit rule, which states that an affidavit submitted solely for the purpose of opposing a motion for summary judgment must be disregarded when it directly contradicts deposition testimony. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); see also Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) ("[A] party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." (internal quotations omitted) (citing Van T. Junkins and Associates v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir. 1984)). When an affidavit is contradictory to the extent that it is "inherently inconsistent" with deposition testimony, a court should disregard that affidavit as a sham and exclude it from the evidence

6

considered in a motion for summary judgment. Rollins, 833 F.2d at 1530; Lane v. Celotex Corp., 782 F.2d 1526, 1531 (11th Cir. 1986). Thus, this court must determine whether the plaintiff's affidavit is so "inherently inconsistent" with his previous deposition testimony regarding the exact content of the conversations with his supervisor after the treadmill accident that it constitutes a sham and should be disregarded.

At the outset, this court notes that the Eleventh Circuit has cautioned against application of this rule because of the harsh effects it can have on a party's case. E.g., Lane, 782 F.2d at 1530. The inconsistencies between the deposition and the affidavit must be substantial because not every discrepancy will justify a court's refusal to consider the contradictory evidence. Id. ("In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition." (quoting Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894 (5th Cir. 1980)). When the discrepancies between a deposition and an affidavit create issues of credibility, those are issues more properly left for the factfinder and not a court considering summary judgment. McCormick, 333 F.3d at 1240 n.7; Lambert v. Independent Life and Accident Insurance Co., 994 F. Supp. 1385, 1389 (M.D. Ala. 1998).

The discussion on exactly what the plaintiff told the defendant centers around the two conversations he had with his

supervisor after the treadmill accident. The deposition testimony of the plaintiff is as follows regarding the first conversation on July 1, 2003:

> Q: Okay. And did you tell him why you were at the hospital?
>
> A: I -- Actually I had -- I had called him when I got hurt. First I -- called Tim and said I was hurt and I had had a fall and that I was going to be late with my wake [sic] -- my weekly sales report. Because I had been put on notice the day before. So when I knew that I was hurt and I wasn't going to get my sales report, I called to let him know that.

Dep. of Peter G. Nicolatos at 105-06 (July 25, 2005). Later on during the deposition, the plaintiff again testified about the first conversation with his supervisor just after the treadmill accident:

> Q: You mentioned, although he said the next day, before you had told him how badly injured you were, you claim, that he had to speak to you immediately, he had something of immediate nature to talk to you about: right?
>
> A: When I -- after I called Dr. Davidson and said what I should do, should I go to the emergency room or should I, you know, can you treat me, after she told me that I should be treated at her office -- and her concern was I was going to go to the emergency room and wait many hours to be attended to. So after I called Dr. Davidson and after I spoke with Dave Burns, I called Tim Boone, spoke with Tim Boone, and I told him that I had just fallen, and that I was in a lot of pain, and there was no way I was going to get my report done. That's when he knew that I had fallen and that I had -- my head hurt, you know, I was in a lot of pain, and that's when he knew. That's what I knew.
>
> Q: The full extent of his knowledge at that point?
>
> A: Yes.

Nicolatos Dep. at 259.

8

The only other point during the plaintiff's deposition where he testifies as to what he told his supervisor is a brief statement about the second conversation on July 2, 2003:

> Q: Okay. About the loss of the job, I just want to touch upon one thing. When your employer called you the next day when you were in the emergency room, he didn't know the nature and extent of your injuries at that time, did he?
>
> A: I told him that I had fallen, that I'd hit my head, that I was in a lot of pain, and I was having x-rays. I didn't know them, so he didn't know them.
>
> Q: Right. That you'd be laid up for weeks or whatever, that you'd have these permanent problems, or any of those things?
>
> A: No, sir. I never imagined it.

Nicolatos Dep. at 257.

While the deposition testimony regarding what the plaintiff told his supervisor is not very detailed, the plaintiff's affidavit, on the other hand, recalls a very detailed conversation. The affidavit, in contrast to the deposition testimony, asserts that the plaintiff advised his supervisor in the first conversation on July 1, 2003, that he had sustained very serious injuries, that he had even told his supervisor exactly what his injuries and symptoms were, and that he did not know when he could resume work:

> On July 1, 2003, immediately after the accident, I called my supervisor, Tim Boone. Since I had been put on final 30 day written notice the day before, I advised him that I would be late in preparing my weekly sales report. I told him that I was thrown off a treadmill, and got knocked out. I told him that my ears were ringing, and I had a terrible headache, and neck and back pain, and that I wasn't thinking well. I was very confused, and not thinking clearly. I told him that an ambulance had

9

> been called, and that I was on my way to the emergency room. I told him that I did not know when I would be able to return to work.

Nicolatos Aff. ¶2.

The plaintiff's deposition testimony as to exactly what he told his supervisor is very limited, whereas the affidavit recounts a much more extensive conversation in which the plaintiff advised his supervisor of the details and severity of his injuries. In the court's view, the affidavit expands on testimony previously given and does not actually contradict the deposition testimony. The two versions of what transpired during the conversations at issue do not directly contradict each other as much as the later version appears to be a more precise recollection. If anything, the discrepancies between the deposition and affidavit are more issues of credibility than outright contradictions and are best left to a jury. Consequently, this court concludes that the affidavit is not a sham and should not be disregarded. Considering both the deposition and affidavit, the court concludes that there is now a dispute as to exactly what the plaintiff told his employer. Thus, there is a genuine dispute about a material fact in this case, and summary judgment is not warranted.

CONCLUSION

For the foregoing reasons, the plaintiff's motion to reconsider [Doc. No. 53-1] is GRANTED. The court hereby VACATES in part its earlier decision granting the defendant's motion for summary judgment [Doc. No. 48]. The court also VACATES the clerk's

judgment [Doc. No. 49], and VACATES the bill of costs taxed against the plaintiff [Doc. No. 57].

SO ORDERED, this 28th day of November, 2006.

_Robert L. Vining, Jr._
ROBERT L. VINING, JR.
Senior United States District Judge